UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEROYA HAZARD,

     Plaintiff,

v

SBM MANAGEMENT SERVICES, LP,
a foreign limited partnership, SBM SITE
SERVICES, LLC, a foreign limited liability
company, and MELANIE SWORDS,

     Defendants.

Case No. 26-11259

Hon.
Mag.

_____

**AKEEL & VALENTINE, PLC**
SHEREEF H. AKEEL (P54345)
HASAN KAAKARLI (P81099)
EMAD R. HAMADEH (P86849)
Attorneys for Plaintiff
888 W. Big Beaver Road., Suite 350
Troy, MI 48084
(248) 269-9595
shereef@akeelvalentine.com
hasan@akeelvalentine.com
emad@akeelvalentine.com

_____

## <u>COMPLAINT AND JURY DEMAND</u>

**NOW COMES** Plaintiff, LEROYA HAZARD, by and through her

undersigned counsel, AKEEL & VALENTINE, PLC, and for her Complaint against

1

Defendants, SBM MANAGEMENT SERVICES, LP, SBM SITE SERVICES, LLC, and MELANIE SWORDS, states as follows:

1.      This is an action for damages and declaratory relief to redress the unlawful employment practices of Defendants.  Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101 *et seq.*

2.      Plaintiff, an African American woman, was employed by Defendant SBM as a Site Supervisor at its facility in the Detroit, Michigan metropolitan area. Throughout her employment, Plaintiff was subjected to severe and pervasive racial harassment and discrimination by her direct supervisor, Defendant Melanie Swords, the Site Manager.

3.      The racial harassment included, but was not limited to: the use of racial slurs such as "n**gers," "porch monkeys," and "negro"; the display of racially offensive imagery depicting individuals in blackface; derogatory references to "melanin Americans" and "black culture"; the singling out of Black employees, including Plaintiff, for disparate treatment; and a pattern of racial animus that permeated the workplace.

4.      Plaintiff repeatedly reported the racial harassment and hostile work environment to SBM's Human Resources department.   Despite Plaintiff's

2

complaints, Defendant SBM failed to take prompt, adequate, or effective remedial action. Instead, Defendant SBM allowed Defendant Swords to continue her discriminatory conduct and, after a temporary removal, returned Defendant Swords to the same facility where Plaintiff worked.

5. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff was constructively discharged from her employment on or about March 6, 2025.

## PARTIES

6. Plaintiff, LeRoya Hazard, is an African American female and is a resident of the City of Detroit, Wayne County, State of Michigan.

7. Defendant, SBM Management Services, LP ("SBM"), is a limited partnership with its corporate headquarters located at 5241 Arnold Avenue, McClellan, California 95652, and with operations in Livonia, Michigan and throughout the State of Michigan. At all relevant times, SBM was Plaintiff's employer within the meaning of Title VII, 42 U.S.C. § 2000e(b), and Michigan's ELCRA, MCL § 37.2201.

8. Defendant SBM Site Services, LLC is a limited liability company and affiliate of SBM Management Services, LP, which operated and/or co-employed Plaintiff at the relevant worksite. At all relevant times, Defendant SBM Site

Services, LLC was Plaintiff's employer within the meaning of Title VII and Michigan's ELCRA.

9.     Upon information and belief, Defendants SBM Management Services, LP and SBM Site Services, LLC are joint employers and/or an integrated enterprise, sharing common management, interrelated operations, centralized control of labor relations, and common ownership or financial control.

10.     Defendant, Melanie Swords ("Swords"), is a white female and was, at all relevant times, the Site Manager at Defendant SBM's facility where Plaintiff was employed.  Defendant Swords acted in a managerial, supervisory, and/or agency capacity for Defendant SBM.  Defendant Swords is sued individually for her violations of the ELCRA.

## **JURISDICTION AND VENUE**

11.     This Court has federal question jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

12.     This Court has supplemental jurisdiction over Plaintiff's ELCRA claims pursuant to 28 U.S.C. § 1367(a), as the state law claims arise out of the same nucleus of operative facts as the federal claims and are inextricably intertwined.

13.     Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to

4

Plaintiff's claims occurred within this District, and Defendants conduct business within this District.

14.     Plaintiff has filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and received her Right to Sue letter from the EEOC on or around February 25, 2026.

## FACTUAL ALLEGATIONS

### Plaintiff's Employment with Defendants

15.     Plaintiff restates and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

16.     Plaintiff Hazard was first hired by Defendant SBM on or about December 12, 2022, as a Custodial Supervisor, at an annual salary of $45,000.00.

17.     On or around December 29, 2023, Plaintiff was involuntarily terminated from her position due to a purported layoff.

18.     On or around May 21, 2024, Defendant SBM extended a written offer of employment to Plaintiff for the position of Site Supervisor, with an annual salary of $58,000.00 (approximately $27.88 per hour).  The offer letter stated that Plaintiff would report directly to Site Manager Melanie Swords.

19.     Plaintiff accepted the offer and her start date for the new position was May 22, 2024.

20. Throughout her employment, Plaintiff performed her job duties satisfactorily and in a manner consistent with Defendant SBM's legitimate business expectations.

***Defendant Swords's Racial Harassment and Discrimination***

21. Beginning shortly after Plaintiff's rehire in May 2024, Defendant Swords, Plaintiff's direct supervisor and Site Manager, engaged in a pattern and practice of severe and pervasive racial harassment directed at Plaintiff and other Black employees.

22. Defendant Swords's racially discriminatory and harassing conduct included, but was not limited to, the following:

    a. Defendant Swords, in the presence of Plaintiff, openly referred to Black employees using the racial slur "*n\*\*gers*";

    b. Defendant Swords referred to a group of Black male employees as "*porch monkeys*" in the presence of Plaintiff and other employees, including white team lead Tamara Magill;

    c. Defendant Swords referred to a newly hired Black employee as a "*negro*" in a derogatory and racially offensive manner;

    d. Defendant Swords made disparaging references to "*melanin Americans*" and "*black culture*," singling out Black employees for ridicule and differential treatment based on their race;

6

e. During the week of May 22, 2024 – Plaintiff's first training week as Site Supervisor – Defendant Swords told Plaintiff that she was an artist who painted, and showed Plaintiff pictures of her work. Defendant Swords then stated, "*I want to show you something and I hope you don't get offended by it.*" Defendant Swords then showed Plaintiff a painting of a woman and a child wearing a polka dot or checkerboard dress, with their faces painted in black paint and white lips, in the form of "Bojangles" – a racist caricature historically used to demean and mock Black people. Defendant Swords then asked Plaintiff if she was offended and stated that she found the picture "*very interesting*";

f. On or about June 20, 2024, Defendant Swords called Plaintiff a "*bitch*" in the presence of another employee, Dajah, while preparing for the night shift. When Plaintiff accidentally dialed Defendant Swords' phone and then hung up, Defendant Swords stated: "*Well looks like the bitch hung up on me.*";

g. Defendant Swords threatened to fire a group of Black male employees while simultaneously referring to them as "*monkeys,*" a statement witnessed by Defendants' team lead, Tamara Magill, a white female employee. When Defendant SBM's Human Resources personnel confronted Swords about this allegation, Swords admitted she said "Not

7

my circus, not my monkeys."  SBM found the admission exonerated Swords;

h.  Defendant Swords divided employees by race, creating separate and unequal treatment between white and Black employees at the worksite;

i.  Defendant Swords instructed Ms. Magill to closely monitor Plaintiff and other black employees, only; and

j.  Defendant Swords' conduct was so severe and pervasive that at least one white employee, Tamara Magill, was compelled to document and report the behavior and ultimately quit her employment because she could no longer tolerate the racial hostility.

23.  The racial harassment described herein was not limited to isolated incidents, but constituted a continuous and pervasive pattern of racially hostile conduct that permeated the workplace and affected the terms and conditions of Plaintiff's employment.

***Plaintiff's Reports to Management and Human Resources***

24.  Upon witnessing and being subjected to Defendant Swords' racial harassment, Plaintiff began documenting the discriminatory conduct.

25.  Plaintiff reported multiple instances of Defendant Swords' racial harassment and discrimination to Defendant SBM's Human Resources department, including but not limited to the use of racial slurs, the display of racially offensive

imagery, the derogatory references to Black employees, and the hostile and discriminatory treatment of Plaintiff and her Black coworkers.

26. Plaintiff's complaints to Human Resources resulted in approximately three (3) calls or communications with HR regarding Defendant Swords' conduct.

27. On or around November 27, 2024, Plaintiff sent a formal written complaint via email to Catalina Petrillo, HR Field Manager, as well as Luis Juarez and Erin Librach at SBM, with a copy to her then-Site Manager Alex Runinkevich.

28. In her email, Plaintiff detailed the pattern of disrespect and mistreatment by Defendant Swords "*from day 1*," stated that the issues had "*turned into a hostile environment*," provided documentation of the issues she was having with Defendant Swords, and expressly requested to be separated from Defendant Swords going forward.

29. On or around December 2, 2024, Ms. Petrillo acknowledged receipt of Plaintiff's complaint and stated she would "*be looking into this*."

30. On or around December 11, 2024, Ms. Petrillo requested that Plaintiff provide "*in writing, specifics on the issues that have you feeling in a hostile work environment*" and additional details regarding her complaints.

31. Ms. Petrillo acknowledged to Plaintiff that she reviewed "*the short statements you have document from May and June of 2024*."

9

32. On or about December 12, 2024, Ms. Petrillo confirmed receipt of Plaintiff's documentation and stated she would be "*reviewing*" it and would "*follow up*."

33. Plaintiff also informed Defendant SBM that Jamie Seals, who served as regional manager at the time the harassment began, was aware of Defendant Swords' conduct because Defendant Swords herself had called Mr. Seals and admitted to the conduct documented by Plaintiff.

34. Defendant Swords contacted Mr. Seals on her own initiative because she feared Plaintiff would report her.

35. In response to Plaintiff's complaints, Defendant SBM temporarily removed Defendant Swords from the building and brought in a new Site Manager, Alex, to replace her.

36. However, Defendant SBM's remedial measures were wholly inadequate.

37. Whenever the replacement Site Manager, Alex, went on vacation or was otherwise unavailable, Defendant SBM returned Defendant Swords to the same building where Plaintiff worked, directly exposing Plaintiff to her harasser.

38. Plaintiff expressly informed Defendant SBM's Human Resources department that she did not want to be around Defendant Swords at all. Defendant SBM disregarded this request.

39.     Moreover, when Plaintiff contacted Human Resources, it would take approximately one month for HR to respond to her complaints, demonstrating a deliberate indifference to Plaintiff's reports of racial discrimination and harassment.

40.     Defendant SBM's response to Plaintiff's complaints was inadequate, ineffective, and demonstrated a pattern of deliberate indifference to the racial harassment and hostile work environment to which Plaintiff was subjected.

### *Plaintiff's Constructive Discharge*

41.     As a direct result of the severe and pervasive racial harassment, Defendant SBM's failure to remedy the hostile work environment, and the continued exposure to Defendant Swords's discriminatory conduct, Plaintiff's working conditions became so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign.

42.     On or around January 16, 2025, Plaintiff sent a text message to her Site Manager, Alex Runinkevich, expressing her frustration with Defendant SBM's failure to address the situation with Defendant Swords.

43.     On or about February 26, 2025, despite Plaintiff's repeated complaints and express request not to be around Defendant Swords, Defendant SBM allowed Defendant Swords to return to the site where Plaintiff worked to cover for Plaintiff's Site Manager, Alex, who was unavailable.

11

44.     On March 6, 2025, as a result of the Defendants' creation, and tolerance, of a racially hostile work environment, Plaintiff submitted her resignation via email to Sandra Santana, with copies to Alex Runinkevich and Nicolas Villalobos, stating she was resigning her position as Site Supervisor effective immediately.

45.     Defendant SBM has characterized this as a "voluntary termination" in its records; however, Plaintiff's resignation was the direct and foreseeable result of the intolerable working conditions created by Defendants, including the persistent racial harassment, Defendant SBM's deliberate indifference to Plaintiff's complaints, and the return of Defendant Swords to Plaintiff's worksite just eight days prior to her resignation.

46.     Defendants knew, or should have known, that their failure to take effective remedial action would result in the constructive discharge of Plaintiff.

47.     As a result of Defendants' actions and inactions, Plaintiff has suffered and continues to suffer damages, including but not limited to the following:

    a.  Severe emotional distress, stress, and anxiety;

    b.  Humiliation and embarrassment;

    c.  Mental anguish and outrage;

    d.  Fear and mortification;

    e.  Loss of income, wages, and employment benefits;

    f.  Loss of earning capacity;

g.  Loss of professional reputation and career advancement opportunities;

h.  Other economic and non-economic damages;

i.  Attorney fees, costs, and expenses; and

j.  Other damages to be determined through the course of litigation.

## COUNT I

## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

*Race Discrimination – Disparate Treatment*
*Against Defendants SBM and SBM Site Services, LLC*

48.  Plaintiff restates and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

49.  At all material times, Plaintiff was an employee and Defendants SBM Management Services, LP and SBM Site Services, LLC were her employers, within the meaning of Title VII, 42 U.S.C. § 2000e(b).

50.  Plaintiff is a member of a protected class on the basis of her race (African American).

51.  At all relevant times, Plaintiff was performing her job in a manner consistent with Defendant SBM's legitimate business expectations.

52.  Defendant SBM, through its agents, representatives, and employees, including Defendant Swords, discriminated against Plaintiff on the basis of her race by, among other things, subjecting her to disparate treatment in the terms and conditions of her employment, including but not limited to being singled out based

on her race, being subjected to racially derogatory language and imagery, and being constructively discharged.

53.     Plaintiff's race was a motivating factor in Defendants' adverse treatment of Plaintiff.

54.     Defendant SBM's actions were willful, intentional, and made in reckless disregard of Plaintiff's rights under Title VII.

55.     As a direct and proximate result of Defendant SBM's unlawful actions, Plaintiff has sustained and continues to sustain injuries and damages.

**WHEREFORE**, Plaintiff requests this Court award judgment against Defendants for compensatory damages, which include back pay and related loss of pay resulting from Defendants' conduct in whatever amount the jury finds necessary, in addition to punitive or exemplary damages plus costs, interest, and attorney fees, as allowed under the law., and such other and further relief as this Court deems just and equitable.

## COUNT II

## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

### *Hostile Work Environment*
### *Against Defendants SBM and SBM Site Services, LLC*

56.     Plaintiff restates and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

57.     Plaintiff was subjected to unwelcome conduct based on her race and/or color.

58.     The unwelcome conduct was severe and/or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

59.     The unwelcome conduct included, but was not limited to: the repeated use of racial slurs by Plaintiff's direct supervisor; the display of racially offensive imagery; derogatory references to Black employees based on race; threats to terminate Black employees while simultaneously using racial epithets; and the division of employees by race.

60.     The hostile work environment affected a term, condition, or privilege of Plaintiff's employment and had the purpose or effect of unreasonably interfering with Plaintiff's work performance and creating an intimidating, hostile, and offensive work environment.

61.     Defendant SBM knew or should have known of the hostile work environment and failed to take prompt and adequate remedial action.

62.     Defendant SBM's actions were willful, intentional, and made in reckless disregard of Plaintiff's rights under Title VII.

63.     As a direct and proximate result of Defendant SBM's unlawful actions, Plaintiff has sustained and continues to sustain injuries and damages.

**WHEREFORE**, Plaintiff requests this Court award judgment against Defendants for compensatory damages, which include back pay and related loss of pay resulting from Defendants' conduct in whatever amount the jury finds necessary, in addition to punitive or exemplary damages plus costs, interest, and attorney fees, as allowed under the law., and such other and further relief as this Court deems just and equitable.

## COUNT III

## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

### *Retaliation*
### *Against Defendants SBM and SBM Site Services, LLC*

64.    Plaintiff restates and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

65.    Plaintiff engaged in protected activity when she reported racial harassment and discrimination to Defendant SBM's Human Resources department on multiple occasions between her rehire in May 2024 and her constructive discharge on March 6, 2025.

66.    Following Plaintiff's protected activity, Defendant SBM retaliated against Plaintiff by, among other things, failing to take adequate remedial action, returning the harassing supervisor to Plaintiff's workplace, failing to respond timely to Plaintiff's complaints, and allowing the continuation of a racially hostile work environment that ultimately resulted in Plaintiff's constructive discharge.

67.    A causal connection exists between Plaintiff's protected activity and the adverse employment actions taken against her in that Defendants assented to Defendant Swords's misconduct and harassment of Plaintiff based on her race.

68.    Defendant SBM's actions were intentional and taken with reckless indifference to Plaintiff's rights under Title VII.

69.    As a direct and proximate result of Defendant SBM's unlawful retaliation, Plaintiff has sustained and continues to sustain injuries and damages.

**WHEREFORE**, Plaintiff requests this Court award judgment against Defendants for compensatory damages, which include back pay and related loss of pay resulting from Defendants' conduct in whatever amount the jury finds necessary, in addition to punitive or exemplary damages plus costs, interest, and attorney fees, as allowed under the law., and such other and further relief as this Court deems just and equitable.

<u>**COUNT IV**</u>

<u>**VIOLATION OF MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT**</u>

*Race Discrimination – Disparate Treatment*
*Against All Defendants*

70.    Plaintiff restates and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

17

71.     At all material times, Plaintiff was an employee and Defendants were her employer(s), covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL § 37.2101, et seq.

72.     Defendant Swords is individually liable under the ELCRA pursuant to MCL 37.2701(a) as an agent of Defendant SBM who aided, abetted, incited, compelled, or coerced the discriminatory conduct, and is further vicariously liable under the doctrine of respondeat superior.

73.     Plaintiff's race and/or color was a motivating factor in Defendants' treatment of Plaintiff.

74.     Defendants, through their agents, representatives, and employees, treated Plaintiff differently from similarly situated non-African American employees in the terms and conditions of employment based on the unlawful consideration of race and/or color.

75.     Defendants' actions were willful, intentional, and/or made in reckless disregard of Plaintiff's rights and sensibilities.

76.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained and continues to sustain injuries and damages.

**WHEREFORE**, Plaintiff requests this Court award judgment against Defendants for compensatory damages, which include back pay and related loss of pay resulting from Defendants' conduct in whatever amount the jury finds necessary,

in addition to punitive or exemplary damages plus costs, interest, and attorney fees, as allowed under the law., and such other and further relief as this Court deems just and equitable.

## COUNT V

## VIOLATION OF MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT

*Hostile Work Environment*
*Against All Defendants*

77.     Plaintiff restates and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

78.     At all material times, Plaintiff was an employee and Defendants were her employer(s), covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101, et seq.

79.     Plaintiff was subjected to unwelcome conduct based on her race and/or color.

80.     The unwelcome conduct was sufficiently severe and/or pervasive to create an intimidating, hostile, or offensive work environment.

81.     The unwelcome conduct affected a term or condition of Plaintiff's employment and/or had the purpose or effect of unreasonably interfering with Plaintiff's work performance and/or creating an intimidating, hostile, or offensive work environment.

82.     Defendants knew or should have known of the hostile work environment and failed to take prompt and adequate remedial action.

83.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained and continues to sustain injuries and damages.

**WHEREFORE**, Plaintiff requests this Court award judgment against Defendants for compensatory damages, which include back pay and related loss of pay resulting from Defendants' conduct in whatever amount the jury finds necessary, in addition to punitive or exemplary damages plus costs, interest, and attorney fees, as allowed under the law., and such other and further relief as this Court deems just and equitable.

## COUNT VI

## VIOLATION OF MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT

### *Retaliation*
### *Against All Defendants*

84.     Plaintiff restates and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

85.     Plaintiff engaged in protected activity by reporting racial harassment and discrimination to Defendant SBM's Human Resources department.

86.     Defendants retaliated against Plaintiff for engaging in protected activities, including but not limited to: failing to take adequate remedial action in response to her complaints; returning Defendant Swords to Plaintiff's workplace

20

despite Plaintiff's express objection; failing to timely respond to Plaintiff's complaints; and allowing the continuation of the hostile work environment that resulted in Plaintiff's constructive discharge.

87.    Defendants' actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

88.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer damages and injuries.

**WHEREFORE**, Plaintiff requests this Court award judgment against Defendants for compensatory damages, which include back pay and related loss of pay resulting from Defendants' conduct in whatever amount the jury finds necessary, in addition to punitive or exemplary damages plus costs, interest, and attorney fees, as allowed under the law., and such other and further relief as this Court deems just and equitable.

Respectfully submitted,

**AKEEL & VALENTINE, PLC**

By: /s/ SHEREEF H. AKEEL
Shereef H. Akeel (P54345)
Hasan Kaakarli (P81099)
Emad R. Hamadeh (P86849)
Attorneys for Plaintiff
888 W. Big Beaver Rd., Ste. 350
Troy, MI 48084
(248) 269-9595
shereef@akeelvalentine.com
hasan@akeelvalentine.com

21

emad@akeelvalentine.com

Dated: April 17, 2026

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEROYA HAZARD,

     Plaintiff,

v

SBM MANAGEMENT SERVICES, LP,
a foreign limited partnership, SBM SITE
SERVICES, LLC, a foreign limited liability
company, and MELANIE SWORDS,

     Defendants.

Case No. 26-11259

Hon.
Mag.

_____

**AKEEL & VALENTINE, PLC**
SHEREEF H. AKEEL (P54345)
HASAN KAAKARLI (P81099)
EMAD R. HAMADEH (P86849)
Attorneys for Plaintiff
888 W. Big Beaver Road., Suite 350
Troy, MI 48084
(248) 269-9595
shereef@akeelvalentine.com
hasan@akeelvalentine.com
emad@akeelvalentine.com

_____

## **JURY DEMAND**

23

**NOW COMES** Plaintiff, LEROYA HAZARD, by and through her undersigned, Akeel & Valentine, PLC, hereby demands a trial by jury of all the issues in this case.

Respectfully submitted,

**AKEEL & VALENTINE, PLC**

By: /s/ SHEREEF H. AKEEL
Shereef H. Akeel (P54345)
Hasan Kaakarli (P81099)
Emad R. Hamadeh (P86849)
Attorneys for Plaintiff
888 W. Big Beaver Rd., Ste. 350
Troy, MI 48084
(248) 269-9595
shereef@akeelvalentine.com
hasan@akeelvalentine.com
emad@akeelvalentine.com

Dated: April 17, 2026